IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. <u>26-CR-616 MIS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| **EDUARDO PRAT**, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>UNITED STATES' MOTION TO LIMIT EXPERT TESTIMONY</u>**

The United States respectfully moves this Court to limit the testimony of the defendant's retained expert, Dr. David M. Blake. Several opinions Dr. Blake intends to offer are inadmissible under Fed. R. Evid. 702 and 704 because they will not assist the jury in understanding the evidence or determining a fact in issue, state legal conclusions of law, and attempt to tell the jury what result to reach. Furthermore, certain opinions are inadmissible under Rule 403 because what little probative value they have is substantially outweighed by the danger of unfair prejudice and they confuse the issues.

## I.   Background

The defendant is charged in a two-count Indictment with, in Count 1: Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242; and in Count 2: Destruction, Alteration, or Falsification of Records in Federal Investigations, in violation of 18 U.S.C. § 1519. ECF No. 3. Trial is set July 20, 2026.

The facts of the case are not complicated. As to Count 1, on May 22, 2023, the defendant was a United States Border Patrol Agent who was on duty in Santa Teresa, New Mexico, patrolling the desert on a United States Border Patrol issued All-Terrain Vehicle (ATV). That morning, he encountered the victim, John Doe, who had illegally entered the United States from Mexico and arrested him. John Doe had been running for approximately 15 minutes before his arrest and was tired and thirsty and asked the defendant for water, but the defendant refused and told John Doe that he needed to bring his own water.

The defendant then transported John Doe and two other undocumented aliens on his ATV to the location of another U.S. Border Patrol Agent who was on horseback. During the transport, John Doe was uncuffed and seated at the rear of the ATV, and the two other undocumented aliens were handcuffed together at their wrists and were seated at the front of the ATV. When the defendant and the other two aliens arrived at the other agent's location, a fourth undocumented alien walked from the horse patrol agent's location to the defendant's ATV and sat next to John Doe on the back of the defendant's ATV.

John Doe again asked the defendant for water and the defendant told John Doe that he would sell water to him for $10. John Doe then removed a wallet from his back pocket to pay for the water and then quickly returned his wallet to his back pocket. John Doe and the fourth alien then presented their arms to the defendant so that their wrists could be handcuffed together, and the defendant handcuffed their wrists together—John Doe's right wrist was handcuffed to the fourth alien's left wrist.

Moments later, the defendant forcefully grabbed John Doe with both hands around John Doe's neck for no apparent, lawful reason as John Doe remained seated, handcuffed, compliant, and non-threatening. The event was captured on the defendant's body worn camera. The video

lasts for three minutes and 19 seconds but there is no audio of the encounter until approximately two minutes into the video, after the defendant grabbed John Doe with his hands, but while John Doe was still trying to separate himself from the defendant who, at that time, was pulling on John Doe's neck gaiter and t-shirt.

Upon information and belief, John Doe is expected to testify that prior to when the defendant grabbed his neck, he told the defendant that he would pay for the "water and his smile," and that he and the defendant exchanged words, but nothing that would warrant the defendant use of force while John Doe's right wrist was handcuffed to the left wrist of the fourth undocumented alien, and his left hand was visible and in front of his body.

As to Count 2, after the defendant's shift that day, he docked his body worn camera which both uploaded the video of the event to a cloud server and automatically deleted the video from the camera. Pursuant to the defendant's training and Customs and Border Protection (CBP) policy, the defendant was supposed to "tag" the video as a use-of-force video which would have flagged the video for review and investigation and preserved the video for three years. However, the defendant initially failed to tag the video at all, and then, on June 12, 2023, the defendant accessed, streamed, and miscategorized the video as an accidental video which scheduled the video for deletion after only 180 days, thereby attempting to hide the video evidence of his civil rights violation. At trial, the United States expects testimony that the subject video is unquestionably a use-of-force video which should have been tagged accordingly, and not an accidental video containing no evidentiary value warranting an accidental tag.

## II.      The controlling law regarding 18 U.S.C. § 242

To prove a felony violation of 18 U.S.C. § 242, the government must prove, beyond a reasonable doubt, (1) that the defendant acted under color of law; (2) that the defendant deprived

the victim of a right secured or protected by the Constitution or laws of the United States; and (3) that the defendant acted willfully.[1] *See United States v. Lanier*, 520 U.S. 259, 264 (1997) (citing *Screws v. United States*, 325 U.S. 91 (1945)); *United States v. Golden*, 671 F.2d 369, 370 (10th Cir. 1982) (citing statute). With respect to the second element, the specific right that is the subject of the violation is the victim's right to be free from the use of unreasonable force by one acting under color of law. The Tenth Circuit has held that the Fourth Amendment is the appropriate standard to assess excessive force claims alleged to have occurred between a victim's warrantless arrest and a judicial officer's determination of probable cause. *See Barrie v. Grand County*, 119 F.3d 862, 866 (10th Cir. 1997).

In addressing an excessive force claim under the Fourth Amendment, one must ascertain whether the arresting officer's actions were objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). In *Graham*, the Supreme Court explained, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.

Reasonableness is evaluated under a totality of the circumstances approach which requires consideration of the following factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (citations omitted).

III.    **The defendant's expert disclosure**

---

[1] The United States is not alleging bodily injury. Upon information and belief, the defendant sustained a scratch to his chest, but no other bodily injury resulted.

On May 22, 2026, the defendant disclosed to the United States Dr. Blake's 52-page expert report (Dr. Blake's Rule 16 Report, attached as Gov't Exhibit 1),[2] Defendant's Notice of Expert Testimony, ECF No. 21, and Dr. Blake's *curriculum vitae.* Dr. Blake's Rule 16 report contains four separate opinions, which can be broken down into four general categories: (1) opinions on the reasonableness of the defendant's conduct; (2) opinions that draw legal conclusions from the evidence; (3) opinions on the defendant's mental state; and (4) opinions relating to the defendant's compliance with law enforcement policies and procedures. The United States moves to limit Dr. Blake's testimony with respect to opinions 2-4, as more fully discussed below.

### IV.      The controlling law regarding the admissibility of expert testimony

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and analyzed under the framework the Supreme Court set out in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,597 (1993) (holding that scientific expert testimony is admissible only if it "rests on a reliable foundation and is relevant to the task at hand"); *see also Kuhmo Tire Co. v. Carmichael*, 526 U.S.137, 141 (1999) (extending *Daubert* to non-scientific testimony and requiring "'technical' and 'other specialized' knowledge").

Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

---

[2] Dr. Blake's Rule 16 Report is stamped "Draft" on every page, however, defense counsel advised that is the final report.

In determining whether proffered expert testimony is relevant, courts must decide whether the expert testimony both rests on a reliable foundation and is relevant to the task at hand. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012); *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)(en banc). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir.), *cert. denied*, 502 U.S. 897 (1991). Expert testimony should not be admitted where "the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir.1994) (expert testimony admitted because operational methods of organized crime families beyond knowledge of average citizen).

Even though expert testimony may be admissible under Rule 702, it may be excluded under Rule 403. *See Daubert*, 509 U.S. at 595 (holding that "a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules" and citing *inter alia* Rule 403). Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Bowman*, 302 F.3d 1228, 1239 (11th Cir. 2002) (quoting Rule 403). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *United States v. Gilliard*, 133 F.3d 809, 815 (11th Cir. 1998) (quoting *Daubert*, 509 U.S. at 595).

V.      **Argument**

   **A. Dr. Blake's second opinion is inadmissible because it opines on two ultimate issues: (1) whether the defendant intended to forcefully grab John Doe by the throat, and (2) whether the use of force was reasonable. Furthermore, Dr. Blake's methodology—reliance on the defendant's self-serving affidavit—is flawed,[3] and his opinion that no law-enforcement agent trained similarly to the defendant would classify the charged conduct as "prohibited" lacks any indicia of reliability.**

Dr. Blake's second opinion reads:

A law-enforcement Agent trained in non-lethal and deadly-force standards similar to those applicable to Agent Prat would not classify brief, unintended contact of approximately two seconds with the neck/face/jawline of a detainee, under similar circumstances, as a chokehold, strangulation, or other prohibited neck restraint that is likely to cause death or serious bodily injury.

Dr. Blake's Rule 16 Report at 14:3-8.

The United States moves to limit or exclude Dr. Blake's second opinion because it infringes on the jury's province to decide two ultimate issues. Dr. Blake's opinion is carefully worded, but the real message he seeks to convey is that what the defendant did was a brief accident and that no real law enforcement officer would consider it a dangerous, prohibited chokehold. In other words, that the defendant's actions were not willful and that his conduct was reasonable. This testimony crosses the line between technical explanation and a forbidden opinion on the ultimate legal issues of willfulness and objective reasonableness under Rules 704(a) and 704(b). Furthermore, Dr. Blake arrives at his opinions by relying directly on a self-serving affidavit prepared to avoid indictment—something that no reasonable expert would rely on in forming an opinion.

If the Court is inclined to allow Dr. Blake to testify regarding his review of the defendant's stated perceptions, the physical affidavit itself must be barred from evidence to prevent the defense

---

[3] Days prior to the United States presenting this case to the grand jury, his attorney at the time presented undersigned counsel with an affidavit from the defendant and asked undersigned counsel to present it to the grand jury, which undersigned counsel did. The affidavit was intended to sway the grand during its deliberations.

7

from backdooring inadmissible hearsay into the record under Rule 403. *See United States v. Pablo*, 696 F.3d 1280, 1287–88 (10th Cir. 2012) (warning that an expert may not become a "backdoor conduit for an otherwise inadmissible statement"). *See also Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 323 (10th Cir. 1989). Additionally, the affidavit should be excluded under Rule 403 because its probative value is minimal, and the danger that the jury will treat the defendant's self-serving, out-of-court statements as substantive evidence of what occurred is substantial. Fed. R. Evid. 403.

With respect to the defendant's state of mind, evidence offered to prove the state of mind of the defendant that goes to an element of the offense is inadmissible. *See* Fed. R. Evid. 704. Rule 704(b) specifically instructs that: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." *Id*.; *United States v. Goodman*, 633 F.3d 963, 968-69 (10th Cir. 2011); *United States v. Richard*, 969 F.2d 849, 854-55 (10th Cir. 1992). "Such issues are matters for the trier of fact alone." *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002). Whether the defendant acted willfully is an explicit element of 18 U.S.C. § 242, and Dr. Blake is completely barred from opining that the defendant lacked that required mental state by declaring the act "unintended."

Circuit courts have consistently held that where, like here, the prosecution must prove a state of mind, statements about the defendant's state of mind are not allowed. *See, e.g., United States v. Dupre*, 462 F.3d 131, 138 (2d Cir. 2006) (noting that "we share the District Court's concern that the proffered evidence [a psychological report] might have constituted an impermissible opinion about the 'ultimate issue' of whether Dupre possessed the mental state constituting an element of wire fraud"); *United States v. Mikutowicz*, 365 F.3d 65, 72 (1st Cir.

2004) ("[E]xpert may not testify to mental state of defendant where mental state is an element of the charged offense.") (citing Fed. R. Evid. 704(b)); *United States v. Windfelder*, 790 F.2d 576, 581 (7th Cir. 1986) (noting that expert testimony is impermissible where it "state[s] an opinion as to the defendant's knowledge or willfulness, a mental state which constitutes an element of the crimes charged").

Here, Dr. Blake's artfully worded opinion about the defendant's intent appears to be offered to establish the defendant's state of mind and, presumably, to establish that the defendant did not act willfully, negating the "willfulness" element required under 18 U.S.C. § 242. Such evidence is inadmissible as the jurors will be the ultimate arbiters of the defendant's intent.

With respect to reasonableness, Dr. Blake appears to intend to testify that a law enforcement agent trained in standards like those applicable to the defendant "would not classify brief, unintended contact of approximately two seconds with the neck/face/jawline of a detainee... as a chokehold, strangulation, or other prohibited neck restraint that is likely to cause death or serious bodily injury." Dr. Blake's Rule 16 Report at 15.

Dr. Blake's assertion that the force was not a "prohibited neck restraint" is a veiled attempt to say that the defendant's use of force was reasonable—an opinion he repeats more explicitly in opinion number four. This is an impermissible legal conclusion. A defense expert cannot offer legal conclusions regarding whether an assault constituted excessive force. *U.S. v. Teel*, 299 Fed.Appx. 387, 389 (5th Cir. 2008) (concluding that the district court properly barred an expert from going beyond consideration of the conduct to offer legal conclusions regarding whether an assault constituted excessive force); *see also United States* v. *Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (stating that testimony about the reasonableness of a shooting is not allowed).

Determining whether the defendant's force was "prohibited" or constitutionally excessive is an ultimate legal question reserved solely for the jury.

Indeed, the central issue in this case is whether the defendant's actions were "reasonable" within the meaning of the Fourth Amendment. *Graham*, 490 U.S. at 395 (holding that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard..."). By applying the *Graham* reasonableness framework to the facts of this case and concluding that a reasonable officer could have acted as the defendant did, Dr. Blake intends to tell the jury how to resolve the central issue in dispute.

Such opinions regarding legal conclusions are inadmissible since expert witness testimony which articulates and applies to the relevant law circumvents the jury's decision-making function by telling it how to decide the case. *United States v. Oles*, 994 F.2d 1519, 1523 (10th Cir. 1993), citing *Specht v. Jensen*, 853 F.2d 805, 808 (en banc)(10th Cir. 1988), *cert. denied*, 488 U.S. 1008 (1989); *see also* Fed. R. Evid. 704, Advisory Comm. Notes ("Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . ."); 4 Weinstein's Federal Evidence 704.04[2][a] (2003) ("The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness. . . . The testimony supplies the jury with no information other than the witness's view of how the verdict should read.").

In *Specht v. Jensen*, the Tenth Circuit considered whether Fed R. Evid. 702 permitted an attorney, called as an expert witness in a case arising under 42 U.S.C. § 1983, to state his opinion that the defendant's conduct violated the law. 853 F.2d at 806. The plaintiffs in *Specht* alleged that

the police violated their Fourth Amendment rights by conducting an illegal search of their home and office. *Specht v. Jensen*, 832 F.2d 1516, 1519-20 (10th Cir. 1987). At trial, the court permitted the plaintiff's expert to testify that consent was not given and that illegal searches had occurred. *Specht*, 853 F.2d at 807. In ruling that the trial court erred, the Tenth Circuit noted that while a witness may refer to the law in expressing an opinion:

> ...an expert's testimony is [only] proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case. *Id.* at 809-10.

*Cf.* Zuchel v. Denver, 997 F.2d 730, 742 (10th Cir. 1993) (noting that courts generally allow experts to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement); *United States v. Myers*, 972 F.2d 1566, 1576-77 (11th Cir. 1992) (noting that in use of force cases, "[w]hile asking whether force was 'reasonable' or 'justified' invades the province of the jury ... an expert can testify as to the prevailing standards in the field of law enforcement").

Dr. Blake's proposed testimony regarding the "reasonableness" of the defendant's actions and use of force is an inadmissible legal conclusion designed to "direct the jury's understanding of the legal standards upon which their verdict must be based." *Specht*, 853 F.2d at 809-10. His opinion is inadmissible because it impermissibly dictates the ultimate issue to the jury. Furthermore, Dr. Blake's methodology is flawed because he relies on the defendant's affidavit prepared in anticipation of being indicted to suggest that John Doe posed a physical threat—something plainly contradicted by the video evidence.

Circuit courts have consistently excluded such testimony. *See Williams*, 343 F.3d at 435 (holding that reasonableness in an excessive force case is a legal conclusion); *Peterson v. City of*

11

*Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (holding that it was reversible error to allow expert testimony that an officer's conduct comported with Fourth Amendment reasonableness standards); *Hygh v. Jacobs*, 961 F.2d 359, 361-64 (2d Cir. 1992) (excluding expert testimony about the reasonableness of an officer's use of force); *Hubbard v. Gross*, 199 Fed. Appx. 433, 443 (6th Cir. 2006) (unpublished opinion), citing *Penna v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999) ("Because testimony about whether [an officer] used reasonable force is a legal conclusion and may confuse the trier of fact, the District Court is within its sound discretion to exclude it."); *see also Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994) (finding inadmissible an expert's comments on the meaning of "deliberate indifference" in a civil rights case).

Based on the parameters set forth in *Specht* and prevailing circuit authority, this court should exclude all testimony from Dr. Blake regarding whether the defendant's actions were not "prohibited," "reasonable," "justified," or "acceptable." Here, the jury will view a videotape of the encounter, leaving them fully equipped to make a commonsense reasonableness determination without expert intrusion.

> **B. Dr. Blake's third opinion is irrelevant and inadmissible. The Government's use-of-force expert's testimony and opinions are based on his more than 25 years of experience and training described in his *curriculum vitiate*, his review of the video and transcripts, and his expert knowledge of CBP use-of-force policy. Even if true, it is irrelevant that the investigative reports fail to "consistently articulate or apply established use-of-force evaluative standards" or use "conclusory labels" like "choke" or "strangle," because the use of those terms in the investigative reports do not inform the basis of the use-of-force expert's opinions and testimony.**

Dr. Blake's third opinion reads:

The investigative documentation likely relied upon to evaluate this use-of-force incident does not consistently articulate or apply established use-of-force evaluative standards and, in several instances, uses conclusory labels (such as 'choking' or 'strangling') rather than describing the underlying facts of the force

used. Additionally, at least one summary of Mr. Perez-Guerrero's statement appears factually inconsistent with the transcribed statement.

Dr. Blake's Rule 16 Report at 20:12-18.

Dr. Blake cites to portions of various investigative reports characterizing the defendant's use-of-force as choking and/or strangling John Doe. *Id.* at 22:11, 16, 21; 23:2, 6, 26, and contrasting that with John Doe's statement to investigating agents that he could breathe. *Id.* at 24:6-8. Dr. Blake then opines that that those terms are "conclusory labels" and do not accurately describe the underlying facts. Merriam-Webster defines the word "choke" as "To Keep from breathing in a normal way by compressing or obstructing the trachea… ." CHOKE, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/choke (last visited June 1,2026); and the word "strangle" as "To obstruct seriously the normal breathing of." STRANGLE*,* Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/strangle (last visited June 1, 2026).

Perhaps, words like, "clamp," "clutch," "seize," "grip," "wrench," or "throat-grab" better describe what the defendant did to John Doe for no lawful, apparent reason. The defendant is welcome to cross-examine any witness on whatever verb he or she uses to describe the defendant's actions, and ultimately, it will be up to the jury to decide whether the defendant used unreasonable and unnecessary force against a detained, compliant, non-threatening person. The defendant's "opinion" that the verb choice does not accurately describe the underlying facts is irrelevant and a matter for the jury to decide. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. Here, Dr. Blake's anticipated testimony that the verbs used in investigative reports, which will not even be offered into evidence, are incorrect is irrelevant and a waste of time, and a factual issue for the jury to decide, if necessary. In any event, the Government's use-of-force expert witness, Matt Harvey,

formed his opinions based on his own review of the video and statements—not the verb choice of the authors of the investigation reports. Indeed, the only time Mr. Harvey uses either word in his Rule 16 report is when he writes in his report that "Pausing the video at this initial contact it is difficult to fully identify BPA Prat' s hand placement, but it appears that his right hand is around the throat of [John Doe] and in a common choking manner." Matt Harvey's Rule 16 Report at 2.

        **C. Dr. Blake's fourth opinion is inadmissible because it opines on the ultimate issue of whether the defendant used reasonable force. Furthermore, his implication that John Doe was the aggressor and posed an imminent threat is based on the defendant's unreliable, self-serving affidavit, and is flatly contradicted by the video and audio evidence.**

Dr. Blake's fourth opinion reads:

> A law-enforcement Agent operating in similar circumstances to those in this case could, based on the totality of the circumstances, reasonably choose to take physical control of a threatening detainee to neutralize a perceived imminent threat. A law-enforcement Agent is not required to wait for a threatened assault to occur before taking protective measures, and is not required to retreat, although Agents are trained to use de-escalation strategies when feasible and safe.

Dr. Blake's Rule 16 Report at 24:26-32.

As discussed above, in response to Dr. Blake's first opinion, any testimony or opinion that the defendant's use of force was reasonable is inadmissible and must be excluded.

Additionally, to the extent that the defense seeks to admit expert testimony from Dr. Blake that (a) the victim threatened the defendant, or that (b) the defendant inadvertently grabbed the victim with both hands around the victim's neck, is inadmissible and must be excluded.

It is for the jury to decide whether the victim threatened the defendant, and whether the defendant lacked the intent to choke the victim. This is especially true because Dr. Blake's legal opinions are based on the defendant's self-serving affidavit submitted to the Government in anticipation of litigation, and his discussions with the defendant. Eliciting an "expert" opinion

about something the jury can readily ascertain for itself is not permissible under the Federal Rules of Evidence. Nor can an expert witness permissibly act as a conduit for the defendant's version of what happened.

Even assuming some probative value exists in allowing an expert to testify regarding whether the victim was resisting or threatening the defendant, that value is substantially outweighed by the danger that the jury will be misled by an expert who purports to expertly describe what he sees on video. *See* Fed. R. Evid. 403. The jury can independently review the video evidence and determine what occurred. "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir.), *cert. denied*, 502 U.S. 897 (1991). Expert testimony should not be admitted where "the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994).

Dr. Blake's opinion that the victim threatened the defendant is based solely on the defendant's affidavit and his conversations with the defendant. Any testimony by Dr. Blake about what occurred outside the video record would not qualify as an independent expert opinion but would instead be a restatement of the defendant's version of events.

The defense cannot admit what would otherwise be inadmissible hearsay under the guise of an expert opinion. See *United States v. Pablo*, 696 F.3d 1280, 1287–88 (10th Cir. 2012) ("If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then the expert is, in effect, disclosing that out-of-court statement for its

15

substantive truth; the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement."). For those reasons, the Court should preclude Dr. Blake from testifying or expressing an opinion that John Doe was the aggressor.

Dr. Blake also opines that the defendant's conduct was consistent with applicable law-enforcement policies, procedures, and training. Most notably, Dr. Blake opines that "Agent Prat's response to a perceived threat of serious bodily injury or death was consistent with CBP and DHS use-of-force training." Dr. Blake's Rule 16 Report at 33:4-8. Throughout his report, Dr. Blake repeatedly measures the defendant's conduct against CBP policies, DHS guidance, and FLETC training materials[4] and concludes that the defendant acted consistently with those standards.

These opinions are inadmissible to the extent that they are offered to suggest that, because the defendant acted consistently with agency policies and training, his conduct was therefore reasonable under applicable use-of-force standards. This type of expert opinion is impermissible in the Tenth Circuit. The Tenth Circuit has held that the jury cannot use law enforcement policies and procedures to "inform the debate whether a civil rights violation has occurred." *United States v. Gould*, 2007 U.S. Dist. LEXIS 33445 (D.N.M. 2007)(Browning, J.)(unpublished opinion) (*citing Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005)); *see also Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005).

Allowing such testimony would confuse and mislead the jury because the defendant's conduct must be analyzed under the Fourth Amendment's reasonableness

---

[4] To the extent that Dr. Blake intends to rely on the FLETC training materials to inform the jury about the defendant's training, the United States objects because the defendant received his use-of-force training by CBP—not FLETC.

prong. Compliance, or lack thereof, with specific, enumerated standard operating procedures is not relevant to that analysis. *Tanberg*, 401 F.3d at 1164.

Of course, this type of expert testimony must be contrasted with testimony from a fact witness regarding the training the defendant received prior to the use of force. In this regard, the fact that the defendant was trained in the use of force procedures, to include training on when force is appropriate is vital to a jury's determination on whether the defendant acted willfully. Without this evidence, a jury cannot assess whether the defendant acted with "bad intent" because there would be no basis on which the jury could evaluate the willfulness of the defendant. *United States v. Lanier*, 520 U.S. 259, 264 (1997) (*citing Screws v. United States*, 325 U.S. 91 (1945)).

A "willful act" is one committed either "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." *Screws*, 325 U.S. at 105. Simply put, the defendant must know that what he is doing is wrong and yet choose to do it anyway. He need not be thinking in constitutional terms when he makes that choice. *Id*. at 106. The Supreme Court has held that a defendant acts with the requisite specific intent if he acts with a bad purpose – *i.e.*, knowing that his actions are wrong – with the effect of violating a clearly established constitutional right. *See Lanier*, 520 U.S. at 264-69.

The key here is that the focus is on the element of willfulness, not the reasonableness of conduct. It is possible for an officer's conduct to be both objectively unreasonable and yet not willful because the officer did what he was trained to do. That issue, whether the conduct was willful by failing to abide by the training, is for the jury to decide. As such, expert opinions on whether an officer's conduct conforms with the

17

training are inadmissible, as they amount to legal conclusions reserved for the jury. However, factual evidence, offered to demonstrate the knowledge of a police officer about the use of force, is relevant and admissible because it provides the jury with the context needed to make the willfulness determination. Said simply, the jury should hear about how the defendant was trained to decide about whether the defendant's failure to follow that training constituted a willful act.

## VI.    Conclusion

Accordingly, the Court should limit or preclude the testimony of Dr. Blake as to opinions 2-4 because the opinions are inadmissible under Fed. R. Evid. 702 and 704, will not assist the jury in understanding the evidence or determining a fact in issue, state legal conclusions of law, and attempt to tell the jury what result to reach. Furthermore, certain opinions are inadmissible under Rule 403 because what little probative value they have is substantially outweighed by the danger of unfair prejudice and they confuse the issues.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

RYAN ELLISON
First Assistant United States Attorney

***Filed Electronically June 2, 2026***
MARK A. SALTMAN
JONATHAN GENNARI
Assistant U.S. Attorneys
200 N. Church Street
Las Cruces, New Mexico 88001
(575) 522-2304

18

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record.

***Electronically Filed June 2, 2026***
MARK A. SALTMAN
Assistant U.S. Attorney